UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:                                                          Case No. 16-10168-DHW
                                                                Chapter 7
JOHN C. TOMBERLIN,
JAN M. TOMBERLIN,

    Debtors.
_____

MULTIBANK 2009-1 CML-ADC VENTURE, LLC,

    Plaintiff,

v.                                                              Adv. Proc. 16-01116

JOHN C. TOMBERLIN,

    Defendant.

## MEMORANDUM OPINION

    Plaintiff, Multibank 2009-1 CML-ADC Venture, LLC (hereinafter "Multibank"), filed this adversary proceeding objecting to the Debtor/Defendant's discharge pursuant to 11 U.S.C. §727. Multibank's Complaint contained three counts: Count I for denial of discharge under §727(a)(2); Count II for denial of discharge under §727(a)(3); and Count III for denial of discharge under §727(a)(4). The matter came on for trial on September 22, 2017. At trial, Plaintiff voluntarily dismissed Count II. At the conclusion of the trial, the undersigned ruled from the bench in favor of the Debtor/Defendant as to Count III finding that the Debtor/Defendant lacked the requisite fraudulent intent required under that Code section.

    At the conclusion of trial, the parties were ordered to submit briefs with respect to the first count, §727(a)(2), and the matter was taken under advisement. Upon consideration of the evidence presented at trial and of the parties' post-trial briefs, the undersigned finds for Plaintiff and Debtor/Defendant's discharge will be denied.

### Jurisdiction

    The court's jurisdiction in this contested matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court referred its title 11 jurisdiction to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because this is a core

proceeding pursuant to 28 U.S.C. § 157(b), this court's jurisdiction extends to the entry of a final order or judgment.

Findings of Fact

Plaintiff, Multibank, is a judgment creditor of the Debtor/Defendant, Dr. Tomberlin. In 2014, Multibank obtained a judgment against Dr. Tomberlin in the amount of $20,576,899.91. However, because this Complaint objects to the discharge of Dr. Tomberlin and not the dischargeability of the debt owed to Multibank, the facts addressed herein will primarily focus on the actions and financial affairs of Dr. Tomberlin. Furthermore, because Plaintiff voluntarily dismissed Count II of the Complaint and because the undersigned ruled from the bench as to Count III, the facts are centered on those pertaining to Count I under §727(a)(2).

Dr. Tomberlin is the sole owner of South Alabama Diagnostic Imaging, PC (hereinafter "SADI"). SADI has one other full-time employee, Kathy Allred. Ms. Allred works as an office manager and personal assistant to Dr. Tomberlin. Dr. Tomberlin's annual salary is approximately $580,000. Prior to September 2015, Dr. Tomberlin's SADI salary was deposited into his personal checking account.[1] During and leading up to this time, Dr. Tomberlin used his bank accounts at Regions Bank for most monthly expenses including, but not limited to: mortgage payments, household expenses, credit card payments, and other personal expenditures.

In September 2015, the IRS levied against Dr. Tomberlin's personal accounts. The levy resulted in bank overdrafts and subsequently led Dr. Tomberlin to use the SADI account as his personal account. Following the levy, the salary paid by SADI no longer went to Dr. Tomberlin's personal checking account but was transferred back to the SADI account. From there, Dr. Tomberlin used the SADI account as he previously used his personal checking account. Dr. Tomberlin testified that this was done to prevent his income from being levied again. He maintained that he wanted to protect the money in order to maintain his business and keep his homes.[2] Records showed money spent from the SADI account for Dr. Tomberlin's personal expenditures including: phone bills, insurance premiums, mortgage payments, and credit card payments. After the levy and prior to the petition date, Dr. Tomberlin transferred $73,591 in salary checks payable to him to SADI. *Plaintiff's Exhibit #2*.

Around the same time, Dr. Tomberlin took out a $50,000 loan from National Life, his life insurance company. Dr. Tomberlin received the check in November 2015 and deposited it into the SADI checking account in December 2015. He testified that he put

---

[1] Dr. Tomberlin had a total of seven bank accounts at two banks.

[2] Dr. Tomberlin had multiple homes/properties. Some of the properties were used for personal vacations and as rental properties. He testified that he could not reaffirm the debt on his primary residence without also reaffirming the vacation/rental properties.

the check into the SADI account as opposed to his personal account due to the IRS levy on his personal accounts. In December of 2015, Dr. Tomberlin closed his personal checking accounts and continued to transfer his salary checks to SADI and make withdrawals therefrom.

Other personal income was also transferred to the SADI account. Dr. Tomberlin received checks for rental property income, a loan payment check, and a check from the sale of Mississippi real property. He deposited all of those checks in the SADI checking account.

On January 28, 2016, Dr. Tomberlin filed the underlying chapter 7 bankruptcy petition. After filing, Dr. Tomberlin continued to transfer his salary checks to SADI.

Legal Conclusions

Section 11 U.S.C. § 727(a)(2)(A) provides:

> **(a)** The court shall grant the debtor a discharge, unless--
> **(1)** the debtor is not an individual;
> **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
> > **(A)** property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C.A. § 727. "To successfully object to a discharge under § 727(a)(2)(A), a creditor must establish (1) that the act complained of was done within one year prior to the date the petition was filed, (2) with the actual intent to hinder, delay, or defraud a creditor, (3) that the act was that of the debtor, and (4) that the act consisted [of] transferring, removing, destroying, or concealing any of the debtor's property." *In re Coady,* 588 F.3d 1312, 1315 (11th Cir. 2009) (quoting *In re Jennings,* 533 F.3d 1333, 1339 (11th Cir. 2008)). In an objection to discharge, the plaintiff has the burden to prove the objection by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 289–91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The facts here are similar to those in *In re Hiett*. 519 B.R. 341 (Bankr. M.D. Ala. 2014). There, the debtor/defendant, Hiett, experienced post-judgment garnishments in Georgia and, after moving to Alabama, did not accept a salary from his Alabama corporations. Hiett did not open any personal accounts in Alabama and, instead, used his corporation accounts to pay personal expenses. At trial, "Hiett testified that he kn[ew] that

keeping the money in corporate rather than personal accounts prevents creditors from being able to access the money." *Id.* at 350. There, the undersigned found "that Hiett, who had experienced the sweeping of his accounts in Georgia banks, feared that the same would happen should he deposit salary into a personal account again. In short, Hiett's intent in refusing a salary and not establishing a personal bank account was to shield his earnings from the judgment creditor." *Id.* at 353. Hiett was denied a discharge. It is difficult to distinguish the actions of Hiett and Dr. Tomberlin. Although Dr. Tomberlin continued to take a salary, he deposited that salary back into a business account thereby shielding those funds from a creditor's garnishment/levy. The transfer made by Dr. Tomberlin differs from the conduct of Hiett, but both defendants used business accounts for personal expenses in order to conceal money from creditors. "'Significantly, § 727(a)(2) does not require a transfer at all; on the contrary, it refers to the transfer *or* concealment of assets, and the atypical structure of the concealment alleged here is not reason alone to absolve the Debtor of concealment in the one-year pre-petition period.'" *In re Hammontree*, No. 09-42677-JJR-7, 2011 WL 2357220, at *5 (Bankr. N.D. Ala. Mar. 11, 2011) (quoting *In re Coady*, 588 F.3d 1312, 1316 (11th Cir. 2009)).

At trial and in brief, Dr. Tomberlin argued that his actions were conducted in accordance with advice of his CPA and that, because of this advice, he lacked an intent to defraud. *See Defendant's Post-Trial Brief* (Doc. #40). He added that Ms. Allred "maintain[ed] detailed records segregating Dr. Tomberlin's personal income and expenses versus those of SADI so that monies would be traceable and relevant income tax returns could be properly prepared" and argued that "[t]his degree of diligence and particularity contradicts an intent to defraud." *Id.* In brief, Dr. Tomberlin relied on *Matter of Smiley*, for the proposition that extrinsic signs of fraud include a "pattern of sharp dealing" and that mere bankruptcy planning is not a fraud on a creditor. 864 F. 2d 562, 567 (7th Cir. 1989).

However, the Court in *Matter of Smiley* went on to make a significant distinction that Debtor/Defendant failed to address. Although a defendant may not have the intent to defraud, the intent to hinder or delay a creditor is sufficient to warrant a denial of discharge under §727(a)(2). *Matter of Smiley*, 864 F.2d at 568 ("Since Mr. Smiley was trying to take advantage of legal exemptions, it is not clear that he intended to *defraud* his creditors. Nevertheless, it is at least a reasonable inference to draw from his behavior that he intended to hinder and delay them. […] Mr. Smiley's discharge must be denied pursuant to Section 727 because it is clear that he intended to hinder or delay his creditors, even if he had no intent to defraud them.") (emphasis added); *see also In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010) ("A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is to hinder or delay a creditor.").

"To block a debtor's discharge pursuant to § 727(a)(2), a creditor is not required to adduce direct evidence of a debtor's bad intent." *In re Kane,* 755 F.3d 1285, 1296 (11th Cir. 2014). "Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence of inferred from the debtor's course of conduct." *In re Jennings,* 533 F.3d at 1338 (11th Cir. 2008). Yet here, Debtor did admit that his actions were committed to prevent the IRS from levying additional monies. When Dr. Tomberlin was asked at trial whether he was concerned the IRS would get any money put in his Regions bank account, Dr. Tomberlin answered, "absolutely." Also at trial, Dr. Tomberlin described his process of using the SADI account instead of personal accounts as a way to "protect" his money. He maintained, on several occasions, that he "had no other option." The undersigned cannot conceive of a way in which knowingly transferring money to a separate entity's account to "protect" the money and prevent garnishment does not hinder or delay a creditor. Dr. Tomberlin may not have specifically said "I hindered" or "I delayed", but his other admissions and his course of conduct can lead only to that conclusion.

## Conclusion

For the foregoing reasons, judgment will enter in favor of Debtor/Defendant on the Plaintiff's § 727(a)(4) count, but judgment will enter for Plaintiff under the § 727(a)(2) count. By separate order, the Debtor/Defendant's discharge will be denied.

Done this the 3rd day of November, 2017.

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtors
Collier H. Espy, Jr., Attorney for Defendant
Joel Connally, Attorney for Plaintiff